# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

QWEST COMMUNICATIONS
COMPANY LLC, a Delaware
Limited Liability Company,

        Plaintiff,


v.

          **MEMORANDUM OF LAW & ORDER**
Civil File No. 10-490 (MJD/SRN)


TEKSTAR COMMUNICATIONS,
INC., a Minnesota Corporation;
FREE CONFERENCING CORP.,
a Nevada Corporation; and
AUDIOCOM, LLC, a Nevada
Corporation;

        Defendants.

_____

Charles W. Steese, Steese, Evans & Frankel, PC, and George Baker Thomson, Jr.
and Jason D. Topp, Qwest Corporation, Counsel for Plaintiff Qwest
Communications Company LLC.

Dan M. Lipschultz, John P. Boyle, and Kristin B. Heebner, Moss & Barnett, PA,
Counsel for Defendant Tekstar Communications, Inc.

G. David Carter and Ross A. Buntrock, Arent Fox, LLP, and Tyler D. Candee,
Lapp, Libra, Thomson, Stoebner & Pusch, Counsel for Defendant Free
Conferencing Corp.

A. Enrico C. Soriano and R. Bruce Beckner, Garvey Schubert Barer, and Larry D. Espel, Greene Espel PLLP, Counsel for Defendant Audiocom, LLC.

_____

## I.    INTRODUCTION

This matter is before the Court on the Motion of Defendant Audiocom, LLC to Dismiss Complaint Pursuant to Rule 12(b)(6) Fed. R. Civ. P. [Docket No. 24], Free Conferencing Corporation's Motion to Dismiss Qwest's Complaint [Docket No. 28], Defendant Tekstar Communication, Inc.'s Motion to Stay Proceedings and Refer the Core Issues to the Federal Communications Commission [Docket No. 47], and Qwest's Motion to Dismiss Tekstar's Counterclaims [Docket No. 33] II and III [Docket No. 57].

Having received and reviewed all of the parties' submissions regarding these motions, as well as the entire record in this case, the Court concludes that oral argument is unnecessary and will rule on the papers in this matter. Therefore, oral argument currently scheduled for Monday, July 19, 2010, is cancelled.  This case is **STAYED** and, as set forth below, certain issues are referred to the FCC under the primary jurisdiction doctrine.  The motions to dismiss are, at this point, denied without prejudice.

## II.    BACKGROUND

## A.    The Parties

Plaintiff Qwest Communications, Co., LLC, ("Qwest") is an interexchange carrier ("IXC") that provides interstate and intrastate long distance telephone services.

Defendant Tekstar Communications, Inc., is a local exchange carrier ("LEC"), specifically a rural competitive local exchange carrier ("CLEC"), which provides telecommunications to approximately 11,000 customers in rural Minnesota.

Tekstar provides interstate and intrastate switched access services to IXCs, such as Qwest.  Qwest's subscribers pay a per minute or monthly charge to Qwest in order to use its long distance network to carry their calls from one local network to another within and between states.  LECs route the calls on the originating end over the LEC's local telephone network to the IXC's facilities and then route the call over the LEC's local telephone network to the recipient based on the telephone number dialed.  LECs bill access charges to IXCs for the use of their local networks – both originating and terminating access charges.

Defendants Free Conferencing Corp. and Audiocom, LLC, are conference call companies ("CCC"s).  They are local exchange customers of Tekstar.  Tekstar

provides a local physical connection to the public switched network through which calls are placed and receive. Tekstar also provides a switching function that directs and delivers calls to their intended destination based on the telephone number dialed by the customer.

IXC subscribers place calls to CCCs to participate in free multi-party conversations, such as chat lines or conference calls. This case is one of many similar cases pending throughout the country, and in this District, regarding a dispute over whether the LEC is legally charging the IXC tariffed switched access charges for delivering the IXC's subscribers' long distance calls to the LEC's CCC customers.

## B.    The Agencies

The Federal Communications Commission ("FCC") has jurisdiction over all interstate and international communications. 47 U.S.C. § 151. The FCC promulgated the CLEC Access Charge Reform Orders that govern the rates that CLECs, such as Tekstar, may charge for access services. See, e.g., Access Charge Reform, Eighth Report and Order and Fifth Order on Reconsideration, FCC 04-110, 19 FCC Rcd. 9108 (May 18, 2004). Special tariff rules apply to rural CLECs, such as Tekstar. Id.; N. Valley Commc'ns, LLC v. Sprint Commc'ns Co., No. Civ.

08-1003-KES, 2010 WL 936723, at *1 n.1 (D.S.D. Mar. 15, 2010).  The FCC has

authority over the federal interstate tariffs filed by Tekstar.  <u>See</u> 47 U.S.C. § 201.

The state regulatory commissions, such as the Minnesota Public Utilities

Commission ("MPUC"), regulate intrastate switched access services.  <u>See</u> Minn.

Stat. § 237.16, subd. 1.

In this case, Tekstar has an interstate access tariff on file with the FCC: the

Tekstar Access Tariff.  This tariff defines terms such as "end user" and

"customer" and includes an extensive section on "switched access services."

## C.    Procedural Background

This case is one of a series of similar cases before the Court.

### 1.    <u>Tekstar Communications, Inc. v. Sprint Communications Company L.P.</u>, 08cv1130 (MJD/SRN)

On April 23, 2008, Tekstar filed a lawsuit against Sprint Communications

Company L.P. ("Sprint") in this Court.  <u>Tekstar Commc'ns, Inc. v. Sprint</u>

<u>Commc'ns Co. L.P.</u>, 08cv1130 (MJD/SRN).  "At the heart of this action is a dispute

between the parties regarding whether connection of calls through Tekstar's

facilities to certain businesses that provide conference calling and similar services

constitutes switched access service under Tekstar's intrastate and interstate

tariffs." Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co. L.P., Civil No. 08-1130

(JNE/RLE), 2009 WL 2155930, at *1 (D. Minn. July 15, 2009).

On July 15, 2009, the Court granted Defendant Sprint's Motion to Stay and

referred issues to the FCC under the doctrine of primary jurisdiction. Id. at *3-*4

This case is still stayed.

## 2. Qwest Communications Company v. Tekstar Communications, Inc., 10cv490 (MJD/SRN)

Qwest has filed an action against Tekstar pending before the MPUC related

to Tekstar's intrastate access tariff, Docket No. P-5096, 5542/C-09-265.

On February 19, 2010, Qwest filed a Complaint against Audiocom, Free

Conferencing, and Tekstar in this Court. The Complaint alleges Count I: 47

U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 201(b); Count II: Unlawful

Cross-Subsidies Under 47 U.S.C. §§ 254(k), 201, 206, 207; Count III: Failure to

Comply with Section 223 – Unjust and Unreasonable Practice Under 47 U.S.C.

§§ 201, 206, 207; Count IV: 47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C.

§ 203; Count V: 47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 203; Count

VI: Common Law Unfair Competition; Count VII: Breach of Contract; Count VIII:

Fraudulent Concealment; Count IX: Tortious Interference with Contract; Count X:

Civil Conspiracy; Count XI: Unjust Enrichment; and Count XII: Declaratory Judgment. It appears that Counts VI through XI (the non-Communications Act claims) are asserted against the CCC Defendants.

Generally, the Complaint alleges that Tekstar's interstate and intrastate access tariffs do not apply to calls delivered to telephone numbers assigned to Tekstar's CCC customers. Qwest asserts that Defendants have engaged in a scheme to drive high volumes of long-distance calls through Tekstar's exchanges by offering free conferencing calling. It further claims that Tekstar illegally bills Qwest "switched access charges" and then pays CCCs a portion of those switched access charges as kickbacks.

Qwest claims that the CCCs are not "end users," which Tekstar's Tariff describes as a "customer" that "subscribes" to services under the interstate access tariff. Qwest also alleges that many of the subject calls did not terminate in a Tekstar certificated exchange.

Tekstar filed various counterclaims against Qwest: Count I: Collection Action Pursuant to Federal Tariff; Count II: Violation of Section 203 of the Communications Act; Count III: Violation of Section 201 of the Communications Act; Count IV: Collection Action Pursuant to State Tariff; Count V: Breach of

Contract; Count VI: Breach of the Implied Covenant of Good Faith and Fair Dealing; Count VII: Unjust Enrichment; and Count VIII: Quantum Meruit. Overall, Tekstar seeks damages based on Qwest's refusal to pay certain tariffed switched access charges from Tekstar.

Tekstar seeks to have this Court stay this litigation and refer certain issues to the FCC. Audiocom and Free Conferencing request that the Court dismiss all claims by Qwest against them. Qwest seeks to dismiss Tekstar's counterclaims Counts II and III against it.

### 3. Other Similar Cases

As the Court has noted, there are numerous cases regarding LEC and IXC disputes over switched access charges based on calls delivered to free calling providers. In each case, as in this case, the IXC asserts that the services provided by the LEC are not covered by the LEC's tariff because the LEC did not "terminate" the calls and the free calling providers were not "end users" as defined by the applicable tariffs. Many of these cases have been stayed while the FCC decides the same three core issues to be referred in this case. See, e.g., Splitrock Props., Inc. v. Sprint Commc'ns Co. Ltd. P'ship, No. CIV. 09-4075-KES, 2010 WL 1329634 (D.S.D. Mar. 30, 2010); Bluegrass Tel. Co., Inc. v. Qwest

*Commc'ns Co., LLC*, No. 4:09-CV-70-M, 2010 WL 1257727 (W.D. Ky. Mar. 26, 2010); *Sancom, Inc. v. Qwest Commc'ns Corp.*, Civ. No. 07-4147(KES), 2010 WL 960005 (D.S.D. March 12, 2010); *Tekstar Commc'ns, Inc. v. Sprint Commc'ns Co., L.P.*, Civ. No. 08-1130 (JNE/RLE), 2009 WL 2155930 (D. Minn. July 14, 2009). *Cf. N. County Commc'ns Corp. v. Verizon Global Networks, Inc.*, 685 F. Supp. 2d 1112, 1117 (S.D. Cal. 2010) (denying request for primary jurisdiction referral).

## III. DISCUSSION

### A. Motion to Stay and Refer to the FCC

Tekstar requests that the Court stay the proceedings in this matter and refer three core issues to the FCC. Free Conferencing supports Tekstar's motion to refer specific issues to the FCC under the primary jurisdiction doctrine. In the alternative, Free Conferencing requests that this Court stay this case until the FCC resolves the similar issues in <u>Tekstar v. Sprint</u>, 08cv1130 (MJD/SRN)). Qwest opposes Tekstar's motion.

### 1. Standard for Primary Jurisdiction

"When it is determined that primary jurisdiction to resolve an issue lies with an agency, a court otherwise having jurisdiction over the case may stay or dismiss the action pending the agency's resolution of the question. The doctrine

is to be invoked sparingly, as it often results in added expense and delay."

Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005) (citations

omitted).

> The doctrine of primary jurisdiction applies where a claim is
> originally cognizable in the courts, and comes into play whenever
> enforcement of the claim requires the resolution of issues which,
> under a regulatory scheme, have been placed within the special
> competence of an administrative body. The contours of primary
> jurisdiction are not fixed by a precise formula. Rather, the
> applicability of the doctrine in any given case depends on whether
> the reasons for the existence of the doctrine are present and whether
> the purposes it serves will be aided by its application. Among the
> reasons and purposes served are the promotion of consistency and
> uniformity within the areas of regulation and the use of agency
> expertise in cases raising issues of fact not within the conventional
> experience of judges or cases requiring the exercise of administrative
> discretion.

Id. (citations omitted).

## 2. The Issues for Referral

Tekstar argues that referral of this case to the FCC will give the Court the

benefit of the FCC's experience and expertise regarding switched access services

and will promote uniformity in the FCC's regulation of such services. Tekstar

requests that the Court apply the primary jurisdiction doctrine to stay these

proceedings and refer the following three issues, which are similar to the

10

questions referred by the other district courts that have stayed similar cases:

(a)     Whether Tekstar is entitled to collect interstate switched access charges it has billed or continues to bill Qwest under Tekstar's Access Tariff for calls Qwest's subscribers place to Tekstar's CCC customers (i.e., whether Tekstar's service with respect to CCCs qualifies as "switched access service" within the meaning of Tekstar's Access Tariff);

(b)     In the event the services provided by Tekstar to Qwest do not qualify as switched access service under Tekstar's Access Tariff, a determination of the proper classification of these services and whether such services are subject to federal tariffing requirements; and

(c)     In the event the services provided by Tekstar to Qwest are not subject to tariffing requirements, whether Tekstar must comply with the tariffing requirements, whether Tekstar is entitled to compensation under federal telecommunications law and, if so, at what level.

> **3.     Whether Tekstar is Entitled to Collect Interstate Switched Access Charges It Has Billed Qwest for Calls to Numbers Assigned to CCCs**
>
> **a.     The FCC's Expertise**

The question of whether Tekstar's service with respect to CCCs constitutes "switched access service" under its Access Tariff is a necessary prerequisite to resolving Qwest's claims. Tekstar asks the Court to refer the question of whether it is entitled to collect interstate switched access charges under its Access Tariff

for calls to numbers assigned to CCCs.

This Court is capable of interpreting tariffs. See United States v. Great N. Ry. Co., 337 F.2d 243, 246 (8th Cir. 1964) ("Ordinarily, the construction of a tariff is a matter of law for the Court, being no different than the construction of any other written document.") (citations omitted). However, this particular type of case implicates highly technical terms and regulatory policy issues that are within the FCC's specialized field of expertise, a fact recognized by numerous other district courts within the Eighth Circuit. See, e.g., Splitrock Props., 2010 WL 1329634, at *6 (noting that application of LEC's switched access tariff involved interpretation of "end user," a term that would "embroil the court in the technical aspects of switched access service"). Referral to the FCC will permit the FCC to use its expertise to make the highly technical determination of whether, in this case, CCCs qualify as "end users" under Tekstar's Access Tariff. See Access Telecommc'ns v. Sw. Bell Tel. Co., 137 F.3d 605, 609 (8th Cir. 1998) ("[W]here words in a tariff are used in a peculiar or technical sense, and where extrinsic evidence is necessary to determine their meaning or proper application, as is the case here, the issue should first go to the appropriate administrative agency.") (citation omitted).

Not only will technical expertise be required to analyze the claims in the case, but also, FCC regulatory policy will necessarily come into play. See Tekstar Commc'ns, Inc., 2009 WL 2155930, at *2. ("Determination of whether the [switched access] services . . . are covered by Tekstar's tariff will require consideration of how those services fit into the larger regulatory regime.") (citations omitted). The FCC is uniquely qualified to make this determination.

Qwest argues that the Court already has sufficient FCC guidance to interpret the Tekstar Access Tariff based on the FCC's recent decision in In the matter of Qwest Commc'ns Corp. v. Farmers & Merchants Mutual Tel. Co., 24 F.C.C.R. 14801, 2009 WL 4073944 (FCC Nov. 24, 2009) ("Farmers II"). However, as other similarly situated district courts have noted, the Farmers II decision was based on a fact-specific inquiry into the details of the relationship of the involved parties. See, e.g., Splitrock Commc'ns, 2010 WL 1329634, at *8. Additionally, the FCC redacted the details of the LEC's billing practices from its opinion. Id.

### b. Uniformity and Consistency

Referral of the tariff application question to the FCC will promote needed consistency in the FCC's regulation of switched access services. First, the FCC itself has stated that it is revisiting its rules governing compensation for switched

access services. See, e.g., In the Matter of Establishing Just and Reasonable Rates

for Local Exchange Carriers Call Blocking by Carriers, DA 07-2863, WC Docket

No. 07-135 (FCC, June 28, 2007); FCC, Intercarrier Compensation, available at

http://www.fcc.gov/wcb/ppd/IntercarrierCompensation/ (last visited July 8, 2010)

("In response to . . . the increasing strains placed on the existing intercarrier

compensation regimes, the Commission has undertaken comprehensive reform

of intercarrier compensation.").

Additionally, at least six similar cases from within the Eighth Circuit have

recently been referred to the FCC under the primary jurisdiction doctrine and

even more stays have been issued across the nation. Given the number of similar

cases across the country and the technical issues involved, there is a large

potential for conflicting rulings if the FCC is not permitted to pass on the core

issues. See, e.g., Tekstar, 2009 WL 2155930, at *2 ("[T]he potential for inconsistent

or contradictory rulings is great . . . . because the FCC currently has under

consideration several different matters that address the same or similar issues.").

The potential for inconsistent rulings is even more apparent in this case,

where the undersigned judge already has a similar case, involving Tekstar's

tariff, stayed pending referral to the FCC. Were the Court to address the merits

of this case, while the earlier case is being decided by the FCC, this Court could find itself ordering opposite outcomes in almost identical cases interpreting Tekstar's Access Tariff.

Finally, the MPUC is currently deciding the same issues asserted by Qwest against Tekstar as they relate to intrastate jurisdiction.

> **4. Determination of the Proper Classification of Services and Whether Such Services Are Subject to Federal Tariffing Requirements, Whether Tekstar Is Entitled to Compensation for Its Services, and, if so, Determination of a Reasonable Rate for the Services**

Tekstar also asks the Court to refer additional contingent questions to the FCC. In the event that the services provided by Tekstar to Qwest do not qualify as switched access service under Tekstar's Access Tariff, the FCC should determine the proper classification of services; whether such services are subject to federal tariffing requirements; whether Tekstar is entitled to compensation for its services under federal telecommunications law; and, if so, at what level.

> **a. The FCC's Expertise**

"The FCC's expertise is necessary to determine whether [an LEC] is entitled to compensation for services not covered by its tariffs." Splitrock Props., 2010 WL 1329634, at *9. In Farmers II, the FCC suggested "that an LEC may

15

obtain compensation from an IXC to which it provided services even though the services did not qualify as 'switched access services' under the LEC's access tariff." Id.; Farmers II, 24 F.C.C.R. at 14814 n.96 ("This is not to say that Farmers [an LEC] is precluded from receiving any compensation at all for the service it has provided to Qwest.") (citations omitted). However, despite the footnote in Farmers II, the FCC did not explain the basis for the LEC's compensation, if any, or how the LEC's termination of calls to the CCCs should be classified within the regulatory scheme. See Splitrock Props., 2010 WL 1329634, at *9. It is particularly within the FCC's area of expertise to explain footnote 96 and answer these questions.

Qwest asserts that the FCC does not have jurisdiction to set retroactive rates. See In re ACC Long Distance Corp. v. Yankee Microwave, Inc., 8 F.C.C.R. 85, 87 ¶ 10 (1993), aff'd 10 FCC Rcd 654 (1995) ("The Commission's authority to determine and prescribe just and reasonable rates derives from Section 205 of the Act which authorizes rates to be prescribed only on a prospective basis.") (footnote omitted). Qwest concludes that this Court cannot refer that question to the FCC.

A determination of reasonable compensation is within the FCC's expertise:

"Congress granted to the FCC the authority to determine whether '[a]ll charges, practices, classifications, and regulations' are reasonable." Access Telecommc'ns, 137 F.3d at 609 (quoting 47 U.S.C. § 201(b)). See also Qwest Corp. v. Scott, 380 F.3d 367, 375 (8th Cir. 2004) (recognizing "the regulating agency's authority to determine the reasonableness of rates"). In footnote 96 of Farmers II, the FCC indicated a willingness to establish a reasonable rate for the traffic, even if the services are not covered by a carrier's tariff.

This Court adopts the sound reasoning of the Sancom court addressing similar protests that the FCC may lack jurisdiction to determine reasonable compensation and, in fact, may not reach that contingent question at all, depending on its resolution of earlier questions:

> [I]t is possible that the FCC will not reach the issue of the reasonable rate for the services in question. But the court has found that if resolution of this action requires determination of a reasonable rate for [the LEC's] services, then this question should be referred to the FCC pursuant to the primary jurisdiction doctrine. Referring all of the issues at one time promotes efficiency and reduces delay. The court will draft the language of the issues to be referred to make it clear that the FCC should only consider the reasonable rate issue if it has jurisdiction to do so and if its analysis on the tariff interpretation and classification of services issues requires determination of the reasonable rate.

Sancom, 2010 WL 960005, at *11.

### b.     Uniformity and Consistency

Referral to the FCC will promote consistency in the regulatory regime.  For example, courts currently disagree about whether an LEC can recovery from an IXC under an unjust enrichment theory or a quantum meruit theory.  <u>Compare Sancom, Inc. v. Qwest Commc'ns Corp.</u>, 643 F. Supp. 2d 1117, 1125-26 (D.S.D. 2009) (finding unjust enrichment claim barred by filed rate doctrine), <u>with</u> <u>N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp.</u>, 659 F. Supp. 2d 1062, 1070 (D.S.D. 2009) (holding filed rate doctrine does not defeat unjust enrichment claim where it is alleged that tariff does not apply); <u>see also</u> <u>Tekstar Commc'ns</u>, 2009 WL 2155930, at *3 ("In the absence of clarity regarding how those services are classified and regulated, it would be premature to address application of the filed tariff doctrine to Tekstar's claim of quantum meruit.") (citations omitted).

> While the court does not refer this legal question [of whether an unjust enrichment theory is viable] to the FCC, the inconsistent rulings show the need for clarification by the FCC on whether services provided by an LEC with respect to free calling provider traffic are subject to tariff requirements, where these services fall into the regulatory regime, and how an LEC may obtain compensation for these services outside of its tariffs.

<u>Splitrock</u>, 2010 WL 1329634, at *9.

### 5.     Conclusion

The Court has fully considered the parties' arguments, including Qwest's concerns regarding the time that an FCC proceeding may take, Qwest's desire to complete discovery in federal court before referral is considered, and general efficiency concerns. The Court recognizes that, in the short run, this primary jurisdiction referral may result in additional delay and expense. However, the critical need for the FCC's technical and policy expertise and the importance of uniformity in this developing and hotly contested area (as well as the need for consistency in the Tekstar switched access opinions emanating from the undersigned judge) mandate referral in this case. This case is one of many that have been referred to the FCC, and the FCC is well-equipped to develop adequate and efficient procedures to address the common issues posed by these numerous referrals. In the long run, referral promotes efficiency and avoids protracted litigation in an uncertain and technical area of the law.

**B.      Motions to Dismiss**

At this early point in the litigation, the Court denies Free Conferencing and Audiocom's motions to dismiss the claims against them. The FCC's guidance on Tekstar's entitlement to collect interstate switched access charges (or some other form of compensation) from Qwest based on calls to CCC customers, such as

Free Conferencing and Audiocom, will provide clarity on whether Qwest has stated a claim in its assertions against these Defendants. Moreover, at this stage of the litigation, the facts regarding the relationship between Tekstar and these CCC Defendants and between Qwest and Tekstar are insufficiently developed for the Court to determine that Qwest cannot state plausible claims for relief based on the allegations in its Complaint.

Similarly, it is premature to address whether Tekstar's claims against Qwest in Counts II and III have merit. Tekstar's counterclaims are also based upon the basic question of whether Tekstar's service of delivering calls from Qwest customers to Tekstar CCC customers is a switched access service. Moreover, it is not clear that, as Qwest suggests, Tekstar's claims are solely based upon the question of how disputed payments should be treated during the pendency of this case.

The Court denies these three motions to dismiss without prejudice to re-file them after the case has returned from the FCC.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Tekstar Communication, Inc.'s Motion to Stay

Proceedings and Refer the Core Issues to the Federal
Communications Commission [Docket No. 47] is **GRANTED**.

2.      This action is **STAYED** pending (i) resolution of the dispute by
agreement of the parties; (ii) a final order in the pending MPUC
proceeding and a decision on the disputed issues by the FCC
pursuant to the referral described below; or (iii) further order of the
Court.

3.      This matter is referred to the FCC for resolution, to the extent the
FCC's jurisdiction permits, of the following issues:

a.      Whether, under the facts of the present dispute between
Qwest and Tekstar, Tekstar is entitled to collect interstate
switched access charges it has billed or continues to bill Qwest
under Tekstar's Access Tariff for calls Qwest's subscribers
place to Tekstar's CCC customers (i.e., whether Tekstar's
service with respect to CCCs qualifies as "switched access
service" within the meaning of Tekstar's Access Tariff);

b.      In the event the services provided by Tekstar to Qwest
do not qualify as switched access service under
Tekstar's Access Tariff, a determination of the proper
classification of these services and whether such
services are subject to federal tariffing requirements;

c.      In the event the services provided by Tekstar to Qwest
are not subject to tariffing requirements, whether
Tekstar must comply with the tariffing requirements,
whether Tekstar is entitled to compensation under
federal telecommunications law and, if so, at what level.

4.      Qwest shall contact the Market Disputes Resolution Division of the
FCC to obtain guidance regarding the appropriate method for
bringing this matter before the FCC. Qwest shall initiate

proceedings as recommended by the Market Disputes Resolution Division within 30 days of the date of this Order. Qwest is directed to furnish the FCC with a copy of this Order as part of its submission.

5.  The parties shall submit a joint report to the Court every three months describing the status of the proceedings before the FCC, the first of which shall be filed no later than three months from the date of this Order.

6.  Motion of Defendant Audiocom, LLC to Dismiss Complaint Pursuant to Rule 12(b)(6) Fed. R. Civ. P. [Docket No. 24] is **DENIED WITHOUT PREJUDICE**. Audiocom may renew its motion when the stay of litigation is ended.

7.  Free Conferencing Corporation's Motion to Dismiss Qwest's Complaint [Docket No. 28] is **DENIED WITHOUT PREJUDICE**. Free Conferencing may renew its motion when the stay of litigation is ended.

8.  Qwest's Motion to Dismiss Tekstar's Counterclaims [Docket No. 33] II and III [Docket No. 57] is **DENIED WITHOUT PREJUDICE**. Qwest may renew its motion when the stay of litigation is ended.


Dated:  July 12, 2010                          s/ Michael J. Davis
                                               Michael J. Davis
                                               Chief Judge
                                               United States District Court